Margaret G. Harrison v. Commissioner.
Harrison v. Commissioner
Docket No. 89922.
United States Tax Court
T.C. Memo 1962-172; 1962 Tax Ct. Memo LEXIS 138; 21 T.C.M. (CCH) 951; T.C.M. (RIA) 62172; July 23, 1962
*138 George G. Young, Jr., Esq., for the petitioner. Frederick A. Levy, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined a deficiency in income tax in the amount of $314 against petitioner for 1955. Petitioner resided in Havertown, Pennsylvania, in 1955. She did not file any Federal income tax return for that year. The present controversy is based upon a single item of income in the amount of $3,085.28 which the Commissioner attributed to petitioner for 1955. She contends that she never received any such income. It is stipulated that during 1955 petitioner "was a co-executrix of the estate of William J. Roberts who died on May 20, 1949." A will executed March 18, 1948, was offered for probate. Petitioner was named as an executrix thereunder. Subsequently, a will executed May 11, 1948, was discovered, and a petition was filed challenging the probate of the earlier will. A vigorous will contest thereupon ensued, in which petitioner supported the earlier will. After a jury trial the May 11, 1948, will was probated in place of the March 18, 1948, will. On February 13, 1953, the decree of the lower court was *139 sustained by the Supreme Court of Pennsylvania, and on March 24, 1953, the Supreme Court of Pennsylvania denied rehearing. . Petitioner was paid $3,000 in fees as an executrix prior to 1955, which she claims to have received as executrix under the earlier will, and reported it as income for the year in which she received it. It is not in controversy herein. On July 1, 1955, petitioner received a check in the amount of $3,085.28 from the estate of the decedent, signed by herself and another person as "Executors". That check was issued pursuant to a schedule of distribution which had been filed with the probate court on June 2, 1955, listing a "commission" payable to petitioner in the amount of $3,085.28. And on July 1, 1955, petitioner signed an "Order to Satisfy Award", which acknowledged receiving the foregoing amount as an award representing commission on principal. Petitioner has never cashed the check. She persists in the contention that the second will was a fraudulent one, notwithstanding the decision of the Supreme Court of Pennsylvania, which has become final. We heard testimony that petitioner did not have *140 her glasses when she signed the check, but we are satisfied that she knew what she was doing, and she took possession of the check, which she continued to hold until the time of trial herein, although she has mutilated that portion of it at the bottom where her signature appeared. Her failure to cash the check does not deprive it of the quality of income to her. Moreover, the evidence further shows that even after the decision of the Supreme Court of Pennsylvania, petitioner had requested, received, and cashed a $620.17 check as an executor's fee with respect to income of the estate. Her position in respect of the check presently in controversy is, to say the least, inconsistent. One who actually receives a check which would otherwise have the quality of income may not escape the income tax consequences by deliberately failing to cash it. Had she, for any legitimate reason, desired to maintain a position that refused to recognize the validity of the second will, she could have declined to receive the check in the first instance. We do not say that such failure to accept a proffered check would necessarily have resulted in a decision in her favor here; but the fact that she accepted *141 the check puts beyond question any possibility of treating it other than as income to her. She cannot change the result by refusing subsequently to cash it. Decision will be entered for the respondent.